UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION



FILED
FEB 26 2013

| | | |
|---|---|---|
| UNL TECHNOLOGY DEVELOPMENT CORPORATION and BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, | * * * * * | CIV 12-3027-RAL |
| Plaintiffs, | * * | OPINION AND ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT |
| vs. | * * * | |
| CHRIS CHRISTENSEN and JOHN DOES 1-25, | * * * | |
| Defendants. | * | |

UNL Technology Development Corporation d/b/a NUtech Ventures ("NUtech") and the Board of Regents of the University of Nebraska ("Board of Regents") sued Chris Christensen and John Does 1-25 claiming a violation of the Plant Variety Protection Act ("PVPA") of 1970. Doc. 1. John Does 1-25 are identified as upstream producers who made unauthorized sales of wheat to Christensen, seed conditioners who cleaned unauthorized wheat for Christensen, or downstream producers who purchased unauthorized wheat from Christensen. Doc. 1 at ¶ 6. Plaintiffs seek compensatory damages, injunctive relief, treble damages, and attorney's fees. Christensen filed a motion for summary judgment. Doc. 16. Plaintiffs then filed a cross-motion for summary judgment. Doc. 21. The motions for summary judgment demonstrate that the contested issues in this case are factual, rather than legal, in nature. For the reasons explained below, this Court denies Christensen's Motion for Summary Judgement and denies Plaintiffs' Motion for Summary Judgment.

I. Facts

Local Rule 56.1 requires parties to file a Statement of Undisputed Material Facts along with a Motion for Summary Judgment. Christensen never filed a Statement of Undisputed Material Facts. Plaintiffs did file a response in opposition to factual claims made by Christensen in his Motion for Summary Judgment, which responded to factual claims Christensen made in his brief supporting his Motion for Summary Judgment. Doc. 29. Plaintiffs filed a three-page document entitled Plaintiffs' Statement of Material Facts in Support of Motion for Summary Judgment. Doc. 22. Christensen filed a Response in Opposition to Plaintiff's [sic] Statement of Undisputed Material Facts, but Christensen's response appears to be a response to Plaintiffs' Motion for Summary Judgment, not to Plaintiffs' Statement of Material Facts. Doc. 31. In part due to Christensen's failure to abide by Local Rule 56.1, this Court draws the facts not subject to genuine dispute from various sources.

On May 23, 2007, the Board of Regents received a Plant Variety Protection Certificate ("PVP Certificate") pursuant to 28 U.S.C. § 2482 from the Secretary of Agriculture for wheat identified as NE01643. Doc. 21-1. This wheat is known to the public as "Overland" wheat. Doc. 22 at ¶ 1. The PVP Certificate specified that the seed of the Overland wheat could only be sold as a class of certified seed. Doc. 21-1 at 2, ¶ 20. The Board of Regents has granted NUtech exclusive worldwide market and commercialization rights to any University of Nebraska-Lincoln patent rights, copyrights, inventions, discoveries, and any technology derived therefrom. Doc. 1 at 2.

Christensen identifies himself as a rancher in Central South Dakota who has recently begun to plant some crops. Doc. 20 at 1. On September 29, 2008, Christensen bought Overland wheat seed from Dennis Beckman of Broken Heart Ranch. Doc. 21-4. Christensen states that

he also picked up Wesley seed at that time. Doc. 17. The parties strongly contest whether Christensen was aware at the time of the purchase that the Overland wheat was protected, or even had any idea what type of wheat it was. See, e.g., Doc. 17; Doc. 22 at ¶ 5. Plaintiffs have provided a Bulk Transfer Certificate, which identifies Christensen as the buyer of Overland wheat on September 29, 2008, and specifies that the Overland wheat is protected under the PVPA. Doc. 21-4. Christensen denies receiving at the time of his purchase any paperwork regarding the Overland wheat seed and did not sign the Bulk Transfer Certificate. Doc. 20 at 2; Doc. 32. Rather, Christensen says that he received the Bulk Transfer Certificate for the Overland wheat in December of 2008, only after having asked seller Dennis Beckman for a bill. Id. Christensen professes that he did not know he should examine the Overland Bulk Transfer Certificate. Doc. 20 at 2. Christensen paid the bill on December 18, 2008, but never signed the Bulk Transfer Certificate. Doc. 20 at 2.; Doc. 21-1 at 1; Doc. 32. Plaintiffs contend that Christensen knew that the seed was protected at the time of purchase in September of 2008. Doc. 29 at ¶ 6.

All parties agree that Chris Allen, an investigator hired by NUtech, bought 391 bushels of wheat from Christensen. Doc. 29 at ¶ 9; Doc. 31 at ¶ 14; Doc. 21-3. However, the parties disagree about the facts surrounding Allen's purchase of wheat from Christensen. Christensen contends that in 2010 he heard an advertisement on DNAX, the Five State Trader, soliciting to purchase Overland wheat. Doc. 20 at 2. Plaintiffs claim no knowledge about any radio advertisement seeking to purchase Overland wheat, but provide no information as to how else the initial contact between Christensen and Allen occurred. Doc. 29 at ¶ 3. Christensen called Allen's number and left a message, along with his phone number, that he had "about 1,200 bushels of Overland winter wheat in a hopper bin" and providing an initial price of around $6.75

a bushel. Doc. 20 at 2; Doc. 21-2 at 2. Plaintiffs argue, and Christensen disputes, that the voicemail was an offer to sell 1,200 bushels of the protected Overland wheat. Doc. 21-2 at 2. After the initial phone call by Christensen, Christensen contends that all contacts were initiated by Allen. Doc. 20 at 2. On October 20, 2010, Christensen informed Allen that the wheat was "just out of the combine," had not been cleaned, and had no germination tests done on it. Doc. 20 at 2. Christensen believes those statements communicated that the Overland wheat was not for sale as seed wheat, but as "merely wheat." Doc. 20 at 2. Christensen ultimately sold 391 bushels of wheat to Allen for $2,700, which he claims was a mixture of Overland, Wesley, and his own wheat. Doc. 20 at 3; Doc. 21-3. Christensen says that this was the first seed wheat that he had ever sold. Doc. 20 at 2. There was never any propagation of the Overland wheat. Doc. 20 at 3. Finally, while Christensen denies any damages, Doc. 31 at 4, Plaintiffs claim that damages are, at a minimum, $120,000, or $100 per bushel that Christensen offered for sale. Doc. 23 at 6.

## II. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not "a disfavored procedural shortcut, but rather . . . an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Rule 1 of the Federal Rules of Civil Procedure). On summary judgment, courts view "the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." E.E.O.C. v. CRST Van Expedited, Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans,

647 F.3d 789, 791 (8th Cir. 2011)). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012).

### III. Discussion

This case arises under the PVPA. 7 U.S.C. § 2321 *et seq.* The stated purpose of the PVPA is to "afford adequate encouragement for research, and for marketing when appropriate, to yield for the public the benefits of new varieties." 7 U.S.C. § 2581. To further this goal, the PVPA provides a cause of action for infringement against any person who performs, without authority, any of the following:

> (1) sell or market the protected variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it;
> (2) import the variety into, or export it from, the United States;
> (3) sexually multiply, or propagate by a tuber or a part of a tuber, the variety as a step in marketing (for growing purposes) the variety;
> (4) use the variety in producing (as distinguished from developing) a hybrid or different variety therefrom;
> (5) use seed which had been marked "Unauthorized Propagation Prohibited" or "Unauthorized Seed Multiplication Prohibited" or progeny thereof to propagate the variety;
> (6) dispense the variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;
> (7) condition the variety for the purpose of propagation, except to the extent that the conditioning is related to the activities permitted under section 2543 of this title;
> (8) stock the variety for any of the purposes referred to in paragraphs (1) through (7);
> (9) perform any of the foregoing acts even in instances in which the variety is multiplied other than sexually, except in pursuance of a valid United States plant patent; or

> (10) instigate or actively induce performance of any of the foregoing acts.

7 U.S.C. § 2541(a). Exceptions exist to this protection, including for a farmer who can save seed to replant, 7 U.S.C. § 2543, and for use in research, 7 U.S.C. § 2544. The United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals under section 71 of the PVPA, which is codified at 7 U.S.C. § 2461. 28 U.S.C. § 1295(a)(8). Thus, Federal Circuit precedent controls in this case for all substantive purposes. Delta and Pine Land Co. v. The Sinkers Corp., 177 F.3d 1343, 1350 (Fed. Cir. 1999).

Christensen seeks summary judgment, citing several factual issues that, if resolved in his favor, he argues would decide the case in his favor. These include that Christensen did not know that the sale of Overland wheat was prohibited, that Christensen's sale of wheat was legal, and that there are no damages to Plaintiffs. Doc. 20 at 4-6. Plaintiffs contest all of these factual allegations and move for summary judgment on Christensen's liability for infringement of the PVPA and the amount of damages. Doc. 21 at 1.

### A. Notice of Protected Status of Wheat

The parties strongly contest whether Christensen had notice that the Overland wheat he purchased and the Overland wheat he later sold were protected. Christensen argues that he is entitled to summary judgment on this issue because he was never aware that his sale was illegal and thus cannot be held liable for that sale. Doc. 20 at 4-5. Plaintiffs contend that Christensen had prior actual notice of Overland wheat's protected status based on the Bulk Transfer Certificate and are entitled to summary judgment on Christensen's liability under the PVPA. Doc. 21 at ¶ 16.

Under 7 U.S.C. § 2541, the PVPA prohibits various uses of protected plants, including the selling and propagation of protected varieties, if the defendant has notice of the plant's protected status. Section 2567 governs what constitutes proper notice to impose liability under § 2541. Section 2567 provides that an owner may give notice of a protected variety by affixing a label indicating that the variety is protected. Or, "[i]n the event the variety is distributed by authorization of the owner and is received by the infringer without such marking, no damages shall be recovered against such infringer . . . unless the infringer has *actual notice or knowledge* that propagation is prohibited or that the variety is a protected variety . . . ." 7 U.S.C. § 2567 (emphasis added). The Federal Circuit has required scienter for liability under § 2541. For example, under § 2541(a)(1), a third-party can only be liable for transferring possession of a seed to a disallowed party if the third-party transferor knew that the transferee was a disallowed party. Delta and Pine Land Co., 177 F.3d at 1351 ("Absent scienter, however, involvement in farmer-to-farmer transfers outside the express exemptions, should not subject delinters and ginners to liability for infringement."). Under § 2541(a)(6), a dispenser of seed must have notice that it received a protected variety before liability attaches. Syngenta Seeds, Inc. v. Delta Cotton Co-op., Inc., 457 F.3d 1269, 1275 (Fed. Cir. 2006).

Under § 2567, at least two factual questions exist in this case. The first is whether the Overland wheat was properly labeled at the time Christensen bought it from Dennis Beckman. If the Overland wheat was labeled as protected, then proper notice was given. If the Overland wheat was not labeled as a protected, then Plaintiffs must show that Christensen had actual notice or knowledge that the subsequent sale for seed was protected. Plaintiffs have submitted records of conversations between Christensen and Allen that they contend show conclusively that Christensen knew that the wheat seed was protected. Doc. 30-1. However, Christensen

7

adamantly contests this in his affidavit. Doc. 17. Because the question remains whether the wheat was properly labeled and whether Christensen had notice that the wheat he purchased and sold was protected, there is a genuine issue of material fact and neither party is entitled to summary judgment on whether there was notice of the protected status of the Overland wheat.

### B. Whether Wheat was Sold for Propagation Purposes

Christensen seeks summary judgment on the conclusion that his sale of wheat was legal. The parties disagree on whether the Overland wheat sold by Christensen was sold for propagation purposes. Under § 2541(a)(6), liability attaches when one "dispense[s] the variety to another, in a form which can be propagated" in certain circumstances. 7 U.S.C. § 2541. Christensen contends that the Overland wheat he sold was not in a form that could be propagated, but was bin run wheat. Doc. 33 at 2. Plaintiffs disagree based on Christensen's communications with Allen. A material issue of fact remains as to whether Christensen was indeed selling the Overland wheat as seed.

Christensen also asserts that his sale was legal under the exemption provided by § 2543. Doc. 33 at 1. Section 2543 provides:

> A bona fide sale *for other than reproductive purposes*, made in channels usual for such other purposes, of seed produced on a farm either from seed obtained by authority of the owner for seeding purposes or from seed produced by descent on such farm from seed obtained by authority of the owner for seeding purposes shall not constitute an infringement.

7 U.S.C. § 2543 (emphasis added). Section 2543 is an exemption allowing farmers to make some sales of a protected variety of seed to other farmers. The exemption contained in § 2543, however, does not apply to infringements under subsections (a)(3) and (a)(4) of § 2541. 7 U.S.C. § 2543.

8

The United States Supreme Court has addressed the § 2543 exemption. Asgrow Seed Co. v. Winterboer, 513 U.S. 179 (1995). In Asgrow Seed, Dennis and Becky Winterboer and their family farm business were growing and then conducting brown-bag sales of a soybean variety protected by Asgrow Seed Company under the PVPA. Id. at 181-82 ("A brown-bag sale occurs when a farmer purchases seed from a seed company . . . , plants the seed in his own fields, harvests the crop, cleans it, and then sells the reproduced seed to other farmers . . . ."). Asgrow Seed Company hired a local farmer to make a purchase from the Winterboers, and the Winterboers sold him twenty bags of one variety of protected Asgrow soybeans and twenty bags of a different variety of protected Asgrow soybeans. Id. Asgrow brought an action against the farmers seeking an injunction and damages. Id. The Winterboers defended under § 2543. Id. at 183-84.

The Supreme Court in Asgrow Seed characterized § 2543 as being "quite impossible to make complete sense of." Id. at 186. The Supreme Court reasoned: "a farmer does not qualify for the exemption from infringement liability if he has '(3) sexually multipl[ied] the novel variety as a step in marketing (for growing purposes) the variety . . . .'" Id. at 186 (quoting 7 U.S.C. §§ 2541(3)). Under the Supreme Court's interpretation of § 2543, the crucial question became whether the planting and harvesting were conducted "as a step in marketing." Id. The Court defined marketing as "the act of holding forth property for sale, together with the activities preparatory thereto (in the present case, cleaning, drying, bagging, and pricing the seeds)." Id. at 187. There is no requirement under this definition that the promotional or merchandising activities be extensive. Id. Under § 2541(a)(3), the sexually multiplying of a variety as a step in marketing means "growing seed of the variety for the *purpose* of putting the crop up for sale."

Id. at 188 (emphasis added). Therefore, a farmer is not eligible for the § 2543 exception if he plants and saves seeds for the *purpose* of selling the seeds. Id.

Under the PVPA and Asgrow Seed, the factual determination of whether Christensen grew Overland wheat seed for the purpose of selling the seed is vital to whether the exemption in § 2543 applies. See 513 U.S. at 190. Christensen's purpose in growing the seed is a factual issue for trial. Also at issue at trial will be whether Christensen's sale to Allen qualifies under § 2543 as a sale between farmers.

### C. Damages Issue

Each party contends that damages can be determined as a matter of law. Christensen contends that Plaintiffs suffered no damages. Plaintiffs argues that there are $120,000 in damages based on the expert opinion of Dr. Leonard White. Christensen did not provide any expert opinion on damages, but contests the valuation by Dr. White, in part because Christensen denies that he ever offered to sell a full 1,200 bushels of Overland wheat. Because genuine issues of material fact exist on the question of liability in this case and because there is an issue of fact on any claimed damages, summary judgment as to damages cannot enter for either party. See 7 U.S.C. § 2564.

### IV. Conclusion

Accordingly, it is hereby

ORDERED that Defendant's Motion for Summary Judgment, Doc. 16, is denied. It is further

ORDERED that Plaintiffs' Motion for Summary Judgment, Doc. 21, is denied. It is finally

ORDERED that the parties cooperates with this Court to set a trial date and deadlines related to pretrial motions and pretrial submissions.

Dated February 26, 2013.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE